UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENDY FALLA, | No. 2:18-cv-0811 KJN P |
| Plaintiff, | |
| v. | ORDER |
| R. RACKLEY, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302. Plaintiff was previously granted leave to serve defendant RN Okoro, or to amend his complaint and delay service of process. In response, plaintiff filed a motion to amend, and provided his proposed amended complaint. Because plaintiff was granted leave to amend, his motion to amend is unnecessary and is denied.

As set forth below, the undersigned grants plaintiff the option of proceeding as to defendant Okoro, or delaying service of process and filing a second amended complaint.

II. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

III. Plaintiff's Amended Complaint

Plaintiff's allegations stem from defendant McIntyre's two second burst of pepper spray on inmates fighting outside plaintiff's cell the early morning of August 10, 2017. Defendants Mari, Hansen, Patton, Cooperhaven, Curry and Pineda responded to the fight. The pepper spray came into plaintiff's cell and burned him and caused him to suffer an asthma attack. Plaintiff waited in his cell for officers to come decontaminate him, was coughing and gagging, having trouble breathing, and had an asthma attack. Plaintiff then went to breakfast and to work but did not see correctional officers providing decontamination, fresh air, or medical attention.

////

Subsequently, at an unidentified time, but apparently after his work assignment, plaintiff asked defendant Cooperhaven to see the nurse because plaintiff could not breathe. Defendant Cooperhaven gave plaintiff permission to go to the nurse's office. At the office, plaintiff asked defendant officer Garrett to see the nurse because plaintiff was exposed to a chemical agent and inhaled the toxic vapors, and let Garrett know that plaintiff "couldn't breathe." (ECF No. 12 at 6.) Defendant Garrett spoke with defendant R.N. Okoro, returned and told plaintiff to "fill the sick call slip out and that nurse K. Okoro isn't going to see you." (ECF No. 12 at 6.) Plaintiff stated, "he used to have asthma and couldn't breathe." (Id.) Garrett told plaintiff to go see the floor officer in his building and say you are "dying" and come back in a stretcher, claiming this was what defendant Okoro told Garrett to tell plaintiff if he wanted to be seen for his injuries. (Id.) Plaintiff went to building officer defendant Curry, and explained that plaintiff could not breathe due to the pepper spray, and told Curry what happened at the nurse's office. Defendant Curry took plaintiff back to the nurse's office, but defendant Okoro told Curry that plaintiff was not going to be seen unless he came in on a stretcher. Defendant Curry, upset by Okoro's response, tried to say plaintiff said he was dying and told plaintiff to get on the stretcher, but plaintiff would not say he was dying or get on the stretcher. Curry, upset, went back to his office, without documenting or reporting the incident, leaving plaintiff to suffer in "agonizing pain." (ECF No. 12 at 7.) Plaintiff, still suffering from the pepper spray and having an asthma attack, then went to unit 5, where defendant Cooperhaven asked plaintiff whether he was supposed to be in class, and then left, not providing plaintiff with decontamination or medical attention when plaintiff's medical need was obvious. It was not until August 19, 2017, when nonparty nurse E. Guitarte identified a .5 cm pepper spray burn rash on plaintiff's right arm. On August 22, 2017, plaintiff was examined by the doctor and prescribed an asthma inhaler, which plaintiff alleges was the result of the inhalation of the chemical agent.

Plaintiff alleges that defendants Mari, Hansen, Patton, Cooperhaven, Curry and Pineda failed to provide decontamination and medical treatment following defendant McIntyre's use of pepper spray. Plaintiff also alleges that defendants Sheufelt, Rackley and Cahayla concluded that such use of force was necessary, even though plaintiff was not involved in the fight. Plaintiff

alleges that defendants Rackley, Hasen, Cahayla, Sheufelt, Curry, Cooperhaven, Mari, McIntyre, Patton, Garrett, Toman, Okoro and Pineda failed to report plaintiff's allegation and obstructed justice. Plaintiff further alleges that defendant Toman was the supervisor in charge of the responsibility for defendant Okoro denying plaintiff medical attention.

IV. Governing Standards

Prison officials are required "to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982), abrogated on other grounds by Sandin v. O'Connor, 515 U.S. 472 (1995). To state a claim the plaintiff must show that the defendants acted with deliberate indifference. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Additionally, an officer can only be held liable for failing to intercede if he had a realistic opportunity to intercede and failed to do so. Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

In order to state a claim under the Eighth Amendment regarding medical care, plaintiff must allege and prove that he suffered a sufficiently serious deprivation (the objective prong of the claim) and that officials acted with deliberate indifference in allowing or causing the deprivation to occur (the subjective prong of the claim). Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Thus, when a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

A viable Eighth Amendment medical claim states two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment

4

violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994). If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to it with deliberate indifference. Farmer, 511 U.S. at 834. In general, a prisoner may show deliberate indifference with evidence that officials denied, delayed, or intentionally interfered with medical treatment, or he may show it by the way in which prison officials actively provided medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quotation omitted). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

V. Discussion

The court has reviewed plaintiff's complaint and, for the limited purposes of § 1915A screening, finds that it states a potentially cognizable Eighth Amendment claim against defendant Okoro. See 28 U.S.C. § 1915A. Defendant Okoro allegedly was advised of plaintiff's injuries multiple times yet refused to see or treat plaintiff.

Plaintiff has again failed to state cognizable civil rights claims against the remaining defendants, as explained below.

Defendant McIntyre dispensed a two second burst of pepper spray to stop a fight outside plaintiff's cell and pepper spray vapors entered plaintiff's cell. Such allegation fails to demonstrate that defendant McIntyre intentionally sprayed plaintiff, or that defendant McIntyre was aware of a substantial risk of harm to plaintiff, or that McIntyre was responsible for decontaminating plaintiff following the use of pepper spray on inmates fighting outside plaintiff's cell.

A prisoner can establish deliberate indifference by showing correctional staff failed to properly decontaminate him from the effects of pepper spray. Clement v. Gomez, 296 F.3d 898, 904 (9th Cir. 2002). However, the prisoner must first establish that the defendant was subjectively aware of the risk of serious injury from a failure to decontaminate, yet disregarded that risk. Id. In Clement, after a violent fight erupted in a cell, prison staff used two bursts of pepper spray, each lasting up to five seconds, and the pepper spray vapors drifted into adjacent cells. Id. at 901. Despite observing several prisoners coughing and gagging, and deputies taking turns stepping outside for fresh air, and also coughing and gagging in the hall, the deputies denied showers and medical attention to the prisoners exposed to the pepper spray. Id. at 905.

Here, plaintiff alleges no facts suggesting any of the correctional officers involved in the use of force incident were subjectively aware that plaintiff was exposed to pepper spray vapor or needed decontamination or medical care. Rather, although he claims he suffered gagging and coughing, plaintiff alleges that he "was in his cell at his bed waiting for the correctional officers to come and provide medical treatment and decontamination." (ECF No. 12 at 5.) Plaintiff does not allege that he called out for assistance, or went to the bars of his cell to seek assistance, or that another inmate called out for assistance on his behalf, or that any of the correctional officers involved in the use of force incident were reacting to the effects of pepper spray vapor. Unlike in Clement, plaintiff alleges the use of only one burst of pepper spray for two seconds outside plaintiff's cell. Moreover, rather than alleging facts demonstrating his inability to breathe or suffering an asthma attack, plaintiff states he went to breakfast and then to his work assignment. Indeed, he then walked to the nurse's office and then to class. All of these allegations render implausible his claim that he could not breathe or was suffering an asthma attack sufficient to put

6

responding correctional officers on notice of his alleged need for decontamination based solely on his outward appearance. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Similarly, as to his need for medical care, defendant Cooperhaven authorized plaintiff to go to the nurse's office and defendant Curry escorted plaintiff to the nurse's office, where defendant Garrett asked defendant Okoro to see plaintiff. Defendant Curry then further attempted to have plaintiff receive care by asking plaintiff to get on the gurney, but plaintiff refused. Such actions cannot be construed as deliberately indifferent because they do not reflect a culpable state of mind on the part of such defendants. Rather, it was defendant Okoro who allegedly refused to see or treat plaintiff. Defendants Curry, Cooperhaven, and Garrett, all custody staff, could not administer medical care, and plaintiff alleges no facts demonstrating they could require defendant Okoro to provide such care. Plaintiff complains that such defendants failed to report the incident, but a mere failure to report does not constitute a constitutional violation.

In addition, plaintiff's allegation that defendants Sheufelt, Rackley and Cahayla found the use of force was necessary, standing alone, is insufficient to state a cognizable civil rights claim. Plaintiff was not involved in the fight, and he does not allege that he sustained a rules violation based on the fight. Plaintiff does not have standing to challenge a rules violation issued to other prisoners.

Finally, as plaintiff was previously informed, claims based on the defendant's supervisorial role is insufficient to state a civil rights claim. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

7

liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff alleges no facts demonstrating that defendants Toman, Rackley, Cahayla, or Sheufelt were involved in this incident.

Accordingly, the undersigned finds that plaintiff's amended complaint fails to state cognizable claims against the remaining defendants, and such claims are dismissed with leave to amend.

VI. Leave to Amend

Therefore, plaintiff may proceed forthwith to serve defendant Okoro, or plaintiff may delay serving any defendant and again attempt to state a cognizable claim against any of the remaining defendants, except defendants Toman, Rackley, Cahayla or Sheufelt, who were not involved in the alleged incidents. If plaintiff elects to attempt to amend his pleading to state a cognizable claim against the remaining defendants, he has thirty days so to do.

If plaintiff elects to proceed forthwith against defendant Okoro, against whom he has stated a potentially cognizable claim for relief, then within thirty days he must return materials for service of process enclosed herewith. In this event the court will construe plaintiff's election as consent to dismissal of all claims against the remaining defendants without prejudice.

If plaintiff chooses to file a second amended complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's federal constitutional or statutory rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d at 743. Furthermore, vague and

conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's second amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend (ECF No. 11) is denied as unnecessary;

2. The allegations in the pleading are sufficient to state a potentially cognizable claim against defendant K. Okoro, R.N. See 28 U.S.C. § 1915A. With this order the Clerk of the Court shall provide to plaintiff a blank summons, a copy of the amended complaint (ECF No. 12), one USM-285 form and instructions for service of process on defendant K. Okoro. Within thirty days of service of this order plaintiff may return the attached Notice of Submission of Documents with the completed summons, the completed USM-285 form, and two copies of the endorsed amended complaint (ECF No. 12). The court will transmit them to the United States Marshal for service of process pursuant to Fed. R. Civ. P. 4. Defendant K. Okoro will be required to respond to plaintiff's allegations within the deadlines stated in Fed. R. Civ. P. 12(a)(1). In this event, the court will construe plaintiff's election to proceed forthwith as consent to an order dismissing his defective claims against the remaining defendants without prejudice.

3. Plaintiff's claims against the remaining defendants are dismissed with leave to amend, with the exception of claims against defendants Toman, Rackley, Cahayla or Sheufelt. Within thirty days of service of this order, plaintiff may amend his complaint to attempt to state cognizable claims against defendants McIntyre, Mari, Hansen, Patton, Cooperhaven, Curry, Pineda, and Garrett. Plaintiff is not obliged to amend his complaint.

9

4. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: December 6, 2018

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/fall0811.14amd

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENDY FALLA,<br><br>        Plaintiff,<br><br>  v.<br><br>R. RACKLEY, et al.,<br><br>        Defendants. | No. 2:18-cv-0811 KJN P<br><br>NOTICE OF SUBMISSION OF DOCUMENTS |

    Plaintiff submits the following documents in compliance with the court's order filed _____.

    _____      completed summons form

    _____      completed forms USM-285

    _____      copies of the Amended Complaint (ECF No. 12)

    Plaintiff consents to the dismissal of defendants McIntyre, Mari, Hansen, Patton, Cooperhaven, Curry, Pineda, Garrett, Toman, Rackley, Cahayla and Sheufelt without prejudice. _____

    OR

    \_\_\_\_\_ Plaintiff opts to file a second amended complaint and delay service of process.

DATED:

                                    _____
                                    Plaintiff

1